RECEIPT # 55884.
AMOUNT $ 150
SUMMONS ISSUED Y-Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 5-6-04

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GROOVE NETWORKS, INC.,

      Plaintiff,

vs.

LEOSTREAM CORPORATION, DAVID
CROSBIE, MICHAEL PALIN, and
BORIS BORUCHOVICH,

      Defendants.

Civil Action No.

**04 CV 10899 PBS**

MAGISTRATE JUDGE Deen

## COMPLAINT

Plaintiff Groove Networks, Inc. ("Groove Networks") brings this action seeking

damages, double and treble damages, disgorgement of unlawful profits, injunctive relief,

attorneys' fees, and other relief due to the conduct of defendants Leostream Corporation

("Leostream"); David Crosbie, director and President of Leostream; Michael Palin, Chief

Operating Officer of Leostream; and Boris Boruchovich, a Chief Architect and Founding

Engineer of Leostream and a former employee of Groove Networks. These defendants,

individually and acting in concert, have infringed Groove Networks' copyrights in

violation of federal copyright law; and misappropriated Groove Networks' trade secrets

and other proprietary information and engaged in unfair and deceptive acts and practices,

all in violation of Massachusetts law, and in breach of the express agreement between

Groove Networks and Boris Boruchovich.

## Parties

1.      Plaintiff Groove Networks is a Delaware corporation with its principal place of business in Beverly, Massachusetts.

2.      Defendant Leostream is a Massachusetts corporation with its principal place of business in Burlington, Massachusetts.

3.      Defendant David Crosbie ("Crosbie") is a resident of Somerville, Massachusetts.  Crosbie is a shareholder, director and the President of Leostream.

4.      Defendant Michael Palin ("Palin") is a resident of Sudbury, Massachusetts.  Palin is a shareholder and the Chief Operating Officer of Leostream.

5.      Defendant Boris Boruchovich ("Boruchovich") is a resident of Bedford, Massachusetts.  Boruchovich is a shareholder and a Chief Architect and Founding Engineer of Leostream, and a former employee of Groove Networks.

## Jurisdiction

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, because this action arises, in part, under the federal copyright laws, 17 U.S.C § 101, *et. seq.*

7.      This Court has supplemental jurisdiction over the state law claims presented herein pursuant to 28 U.S.C. § 1367(a).  In addition, the court has jurisdiction pursuant to 28 U.S.C. § 1338(b) over the claim for unfair and deceptive practices in violation of Massachusetts General Laws, Chapter 93A.

## Facts

8.      Groove Networks is a computer software company that manufactures,

distributes, and sells desktop and server software and related services.

9.      Leostream is a computer software company that manufactures, distributes

and sells virtual machine technology software.

10.     Defendant Boris Boruchovich was employed by Groove Networks as a

software engineer from December 3, 2001 until January 2004.

11.     On or about December 3, 2001, Groove Networks and Boruchovich

entered into a written Nondisclosure, Invention and Noncompetition Agreement ("the

Agreement").

12.     Under his Agreement with Groove Networks, Boruchovich agreed "to

devote his entire business time, attention and energies to the business and interests of

[Groove Networks] and to the performance of his duties . . . . " (Section 1).

13.     Boruchovich further agreed that during his employment with Groove

Networks and for two years thereafter, he would not "develop, design, produce, market,

distribute or sell (or assist any other person or company in developing, designing,

producing, marketing, distributing or selling) products or services competitive with those

developed or under development, designed, produced, marketed, distributed or sold by

[Groove Networks] while [Boruchovich] was employed by [Groove Networks], or which

it would be reasonably foreseeable that [Groove Networks] would develop, design,

produce, market, distribute or sell in connection therewith." (Section 4.1(a)).

14.     The Agreement contained a section entitled "Developments," under which

Boruchovich agreed that any software or other development, developed by Boruchovich

3

during his employment with Groove Networks, that in any way related to the business,

customers, suppliers, products, or potential products of Groove Networks, as well as any

legal interest in any such development, was the property of Groove Networks. More

specifically, Section 5.2(a) of the Agreement provides:

> [Boruchovich] agrees that if at any time or times during his employment
> [Boruchovich] shall (either alone or with others) make, conceive, create, discover,
> invent or reduce to practice any invention, modification, discovery, design,
> development, improvement, process, software program, work of authorship,
> documentation, formula, data technique, know-how, trade secret or intellectual
> property right whatsoever or any interest therein (whether or not patentable or
> registrable under copyright, trademark or similar statutes (including but not
> limited to the Semiconductor Chip Protection Act) or subject to analogous
> protection) (herein called "Developments") that (a) relates to the business of
> [Groove Networks] or any customer of or supplier to [Groove Networks] or any
> of the products or services being developed, manufactured or sold [Groove
> Networks] or which may be used in relation therewith, or (b) results from tasks
> assigned to the Employee by the Company, *such Developments and the benefits*
> *thereof are and shall immediately become the sole and absolute property of*
> *[Groove Networks] and its assigns, as works made for hire or otherwise*, and
> [Boruchovich] shall promptly disclose to the [Groove Networks] (or any persons
> designated by it) each such Development. (emphasis added).

15.    The Agreement further provided for the protection and confidentiality of

trade secrets and other proprietary information belonging to Groove Networks:

> For purposes of this Agreement, Proprietary Information shall mean, by way of
> illustration and not limitation, all confidential information and know-how
> (whether or not patentable and whether or not copyrightable) owned, possessed or
> used by the Company, including, without limitation, any invention, existing or
> future product, formula, method, manufacturing techniques and procedures,
> composition, compound, project, development, plan, vendor information, supplier
> information, customer information, apparatus, equipment, trade secret, process,
> research, reports, clinical data, financial data, technical data, test data, know-how,
> computer program, software, software documentation, hardware design,
> technology, marketing or business plan, forecast, unpublished financial statement,
> budget license, patent applications, contracts, joint ventures, price, cost and
> personnel data. (Section 5.1(a))

16.    The Agreement specifically prohibited Boruchovich from disclosing any

trade secrets or other proprietary information of Groove Networks as follows:

[Boruchovich] agrees that he will not disclose any Proprietary Information to others outside the Company during or after his term of employment without the prior written approval of an officer of the Company, nor will he at any time use Proprietary Information for any unauthorized purpose, unless and until such Proprietary Information (i) has become public knowledge through legal means without fault by the Employee, or (ii) is already public knowledge prior to the signing of this Agreement. (Section 5.1(b))

17.    In or about 2001, Crosbie, Palin, and others, formed Leostream for the purpose of developing, marketing, and distributing a virtual machine technology software product. Leostream was incorporated as Leostream Corporation under Massachusetts law on or about March 4, 2002.

18.    As part of their business model, Crosbie, Palin, and Leostream sought to rely on the services of software engineers and other personnel who had full time employment with other companies and who were therefore willing and financially able to provide services to Leostream without salary, but in exchange for an equity interest in Leostream.

19.    By no later than in or about June 2002, Crosbie, acting in concert with Palin and others, and without knowledge of Groove Networks, recruited Boruchovich to serve as a Chief Architect and Founding Engineer for Leostream and to help develop virtual machine technology software for Leostream.

20.    At all relevant times, Crosbie, Palin, and Leostream were aware that Boruchovich was employed by Groove Networks, and knew and expected that he would continue as a full-time Groove Networks employee, and be compensated as such by Groove Networks, but would not serve loyally as a Groove Networks employee. Instead, the defendants intended that Boruchovich would obtain employee salary and benefits from Groove Networks, while secretly (from Groove Networks) developing virtual machine technology software for the intended benefit of Leostream.

21.    In addition, at all relevant times, Crosbie, Palin, and Leostream knew or should have known that Boruchovich's attempt to develop a software product for Leostream while employed by Groove Networks would be in violation of his contractual and other legal obligations to Groove Networks.

22.    Beginning no later than in or about June 2002 and continuing until at least January 2004, Boruchovich, acting in concert with Crosbie, Palin and other Leostream personnel, served as Chief Architect and Founding Engineer for Leostream and spent substantial amounts of his time developing virtual machine technology software.

23.    During the time that Boruchovich remained an employee of Groove Networks, Boruchovich developed and authored essential and original software components of a virtual machine software technology software package, including authoring and developing the Virtual Machine Controller: Windows Agent, P2V Wizard, and Miscellaneous Utilities.

24.    In conjunction with his work on the virtual machine technology software and to further the efforts of Leostream, Boruchovich communicated with Crosbie and other Leostream personnel during regular business hours, using computer and other equipment belonging to Groove Networks.

25.    The Windows Agent, P2V Wizard, Miscellaneous Utilities, and other virtual machine technology software developed and authored by Boruchovich during his employment with Groove Networks related and relate to the business and products of Groove Networks, as well as the business and products of customers and suppliers of Groove Networks.

26.    In direct and knowing violation of Boruchovich's Agreement with Groove Networks and his fiduciary obligations to Groove Networks, Boruchovich provided and made available to Leostream and the other defendants copies of the Virtual Machine Controller Windows Agent, P2V Wizard, Miscellaneous Utilities, and other software authored by Boruchovich while he was employed by Groove Networks.

27.    In further direct and knowing violation of Boruchovich's Agreement with Groove Networks and his fiduciary obligations to Groove Networks, Boruchovich disclosed to Leostream and the other defendants, ideas, technological know-how, and other information relating to virtual machine technology, all constituting trade secrets of Groove Networks.

28.    The defendants have incorporated the Windows Agent, P2V Wizard, Miscellaneous Utilities, and other virtual machine technology software developed and authored by Boruchovich while he was employed by Groove Networks into a virtual machine technology software product which they have been marketing and distributing as a product of Leostream.  This virtual machine technology software, developed in part by Boruchovich during his employment with Groove Networks, competes with products which it was reasonably foreseeable that Groove Networks would develop, design, produce, market, distribute, or sell in connection with products marketed and distributed by Groove Networks during Boruchovich's employment with Groove Networks.

29.    During the time that Boruchovich was secretly developing and authoring virtual machine technology software for the intended benefit of Leostream and the other defendants, Boruchovich's performance as an employee of Groove Networks deteriorated

to the point where he was failing to effectively perform his responsibilities to Groove

Networks and he provided little effective service to Groove Networks.

30.    On or about January 14, 2004, Groove Networks learned of some of the

breaches of the Agreement by Boruchovich, and terminated his employment with Groove

Networks.

## COUNT I
## Copyright Infringement

31.    The allegations contained in paragraphs 1-30 are realleged and

incorporated in this count.

32.    Pursuant to Section 5.2 of the Agreement, Groove Networks is the sole

owner of the Virtual Machine Controller: Windows Agent, P2V Wizard, Miscellaneous

Utilities, and other virtual machine technology software, developed and authored by

Boruchovich while employed by Groove Networks, and of the copyright and other

interests and benefits in each of those software components.

33.    In accordance with 17 U.S.C. §§201(d) and 204(a), any and all copyright

interests that Boruchovich had or otherwise would have had in the Windows Agent, P2V

Wizard, Miscellaneous Utilities, and other virtual machine technology software

developed and authored by Boruchovich while employed by Groove Networks have been

transferred to Groove Networks under the Agreement.

34.    Groove Networks is the legal and beneficial owner of the copyrights in the

Virtual Machine Controller: Windows Agent, P2V Wizard, and Miscellaneous Utilities.

Groove Networks has registered these copyrights with the Copyright Office.

35.    In violation of 17 U.S.C. § 501, the defendants have infringed upon

Groove Networks' copyrights and the exclusive rights granted to Groove Networks under

17 U.S.C. § 106, in the Virtual Machine Controller: Windows Agent, P2V Wizard, and

Miscellaneous Utilities (collectively referred to as "the Copyrighted Software"), by,

among other acts of infringement:

(a)    copying and causing to be copied the Copyrighted Software;

(b)    distributing and causing to be distributed copies of the Copyrighted

Software by Boruchovich to Leostream and its representatives; and

(c)    distributing copies of the Copyrighted Software to customers of

Leostream, all without the authorization of Groove Networks.

36.    By and through their infringement of Groove Networks' copyrights, the

defendants have collected profits and have caused Groove Networks substantial damages

and harm.

37.    The defendants committed each act of infringement with the knowledge of

Groove Networks' ownership in the Copyrighted Software and knowledge that the

defendants' copying and distribution of the Copyrighted Software infringed on the

copyrights of Groove Networks.

38.    As a result of the defendants' acts of infringement, Groove Networks is

entitled pursuant to 17 U.S.C. § 504 to recover damages, as well as any profits of the

defendants not taken into account in determining actual damages.

39.    The defendants intend to continue copying and distributing the

Copyrighted Software without the authorization of Groove Networks. Each such further

act of copying and distribution will be an infringement, in violation of 17 U.S.C. § 501,

of the exclusive rights granted to Groove Networks under 17 U.S.C. § 106.

40.    Monetary relief alone is not adequate to fully address the harm to Groove Networks caused by the defendants' continuing violations.  Groove Networks is therefore entitled to injunctive relief enjoining the defendants from any further copying or distribution of the Copyrighted Software or other infringement of Groove Networks' copyrights.

## COUNT II
## Misappropriation of Trade Secrets

41.    The allegations contained in paragraphs 1-40 are realleged and incorporated in this count.

42.    In accordance with Sections 5.2, 5.1 and other sections of the Agreement, and other applicable law, the ideas, know-how, techniques, and other knowledge and information developed by Boruchovich during his employment with Groove Networks, including those ideas, know-how, techniques, and other knowledge and information relating to the Virtual Machine Controller: Windows Agent, P2V Wizard, and Miscellaneous Utilities, or otherwise relating to virtual machine technology, constitute proprietary information and trade secrets belonging solely and absolutely to Groove Networks.

43.    These trade secrets, absent Boruchovich's unlawful disclosure, would provide Groove Networks a competitive advantage in the software markets in which it competes, and have independent economic value.

44.    Groove Networks protects its trade secrets relating to its software developments from disclosure, and such information is not generally known outside of Groove Networks' business.

45.     The trade secrets developed by Boruchovich while employed by Groove Networks could not, absent his unlawful disclosure, be readily be acquired or duplicated by others outside of Groove Networks.

46.     Boruchovich acquired and developed the trade secrets in the course of his employment with Groove Networks and was and is under a duty not to disclose or use this information.

47.     Leostream, Crosbie, and Palin wrongfully caused Boruchovich to use and disclose to them the trade secrets and other proprietary information developed and acquired by Boruchovich while employed by Groove Networks in order to facilitate the development and sale by Leostream of a virtual machine technology software product.

48.     Leostream, Crosbie, and Palin used improper means to acquire knowledge of Groove Networks' trade secrets, and/or knew or had reason to know that the trade secrets were acquired under circumstances giving rise to a duty to maintain its secrecy or limit their use, and were derived from or through persons who owed a duty to Groove Networks to protect the trade secrets from disclosure.

49.     All of the defendants have intentionally, willfully and maliciously misappropriated Groove Networks' trade secrets in violation of Massachusetts General Laws Chapter 93, Section 42, and Massachusetts common law.

50.     As a result of the defendants' misappropriation of trade secrets, Groove Networks has suffered and, unless the defendants are enjoined, will continue to suffer, substantial harm and damages.

51.     In addition, the defendants have received revenue, profits, and unfair gain and advantage by their misappropriation of Groove Networks' proprietary information trade secrets.

## COUNT III
## Unfair and Deceptive Acts and Practices (Chapter 93A, §11)

52.     The allegations contained in paragraphs 1-51 are realleged and incorporated in this count.

53.     Groove Networks and the defendants are and, at all relevant times, have been, engaged in trade or commerce in Massachusetts.

54.     The actions of defendant Boruchovich, in surreptitiously developing virtual machine technology software while employed by Groove Networks, but for the intended benefit of Leostream and the other defendants; disclosing and using the trade secrets and proprietary information of Groove Networks to Leostream and the other defendants; and violating his fiduciary duties to Groove Networks, among other acts, all as described more fully above, constitute unfair methods of competition and unfair and deceptive practices in violation of Massachusetts General Laws, Chapter 93A, Section 2.

55.     The actions of defendants Leostream, Crosbie, and Palin in knowingly and willfully causing Boruchovich to provide them with the trade secrets and proprietary information of Groove Networks, developed by Boruchovich while employed by Groove Networks, and to violate his contractual, fiduciary and other legal obligations to Groove Networks, among other acts, all as described in greater detail above, constitute unfair methods of competition, and unfair and deceptive acts and practices in violation of Massachusetts General Laws, Chapter 93A, Section 2.

56.    The actions or transactions constituting unfair or deceptive acts in violation of Massachusetts General Laws, Chapter 93A, occurred primarily and substantially in Massachusetts.

57.    The actions of the defendants in violation of Massachusetts General Laws, Chapter 93A, were intentional and willful, and caused and continue to cause substantial harm and damages to Groove Networks.

## COUNT IV
### Breach of Contract
### (Boruchovich)

58.    The allegations contained in paragraphs 1-57 are realleged and incorporated in this count.

59.    The Agreement between Groove Networks and Boruchovich obligated Boruchovich, among other obligations: to devote all of his business time and efforts to Groove Networks; not to compete with the business of Groove Networks; to maintain and protect Groove Networks' ownership in any developments made by Boruchovich during his employment with Groove Networks; and to maintain the secrecy of, and to not disclose, any information relating to such developments, or any other trade secrets of Groove Networks, all as described in more detail above.

60.    Groove Networks has duly performed all of its obligations to Boruchovich under the terms of the Agreement.

61.    Boruchovich has breached the Agreement.

62.    As a result of Boruchovich's breach of the Agreement, Boruchovich has caused substantial harm and damages to Groove Networks.

## COUNT V
## Breach of Implied Covenant of Good Faith and Fair Dealing
### (Boruchovich)

63.    The allegations contained in paragraphs 1-62 are realleged and incorporated in this count.

64.    Implied in the Agreement between Groove Networks and Boruchovich is a covenant of good faith and fair dealing.

65.    Boruchovich has breached the implied covenant of good faith and fair dealing by, among other things, failing to devote all of his business time and energy to the interests of Groove Networks; engaging in conduct in competition with the business of Groove Networks under the terms of the Agreement; failing to maintain and protect Groove Networks' ownership in developments made by Boruchovich during his employment with Groove Networks; and failing to maintain the secrecy of, and disclosing to Leostream and the other defendants, trade secrets of Groove Networks, including information relating to developments made by Boruchovich during his employment with Groove Networks.

66.    As a result of Boruchovich's breach of the implied covenant of good faith and fair dealing, Boruchovich has caused Groove Networks to suffer substantial harm and damages.

## COUNT VI
## Breach of Fiduciary Duty
### (Boruchovich)

67.    The allegations contained in paragraphs 1-66 are realleged and incorporated in this count.

14

68.    Boruchovich was an employee of Groove Networks occupying a position of trust and confidence and owing fiduciary duties, including duties of loyalty and good faith, to Groove Networks.

69.    Boruchovich breached his fiduciary duties to Groove Networks by, among other things, knowingly and willfully breaching the Agreement; failing to devote all of his business time and energy to the interests of Groove Networks; engaging in conduct in competition with the business of Groove Networks under the terms of the Agreement; failing to maintain and protect Groove Networks' ownership in developments made by Boruchovich during his employment with Groove Networks; and failing to maintain the secrecy of, and disclosing to Leostream and the other defendants, trade secrets of Groove Networks, including information relating developments made by Boruchovich during his employment with Groove Networks; and concealing his conduct from Groove Networks.

70.    As a result of Boruchovich's breach of his fiduciary duties, Groove Networks has suffered substantial harm and damages.

71.    Boruchovich's breach of fiduciary duties entitles Groove Networks to forfeiture of compensation, payments, and other benefits paid to Boruchovich.

## COUNT VII
### Tortious Interference with Contract
### (Leostream, Crosbie, and Palin)

72.    The allegations contained in paragraphs 1-71 are realleged and incorporated in this count.

73.    At all material times, Crosbie, Palin, and Leostream had knowledge of the obligations of Boruchovich under the Agreement with Groove Networks: to devote all of his business time and efforts to Groove Networks; not to compete with the business of

15

Groove Networks; to maintain and protect Groove Networks' ownership in any developments made by Boruchovich during his employment with Groove Networks; and to maintain the secrecy of, and to not disclose, any information relating to such developments, or any other trade secrets of Groove Networks, all as described in more detail above.

74.    By engaging in the conduct described in this Complaint, Crosbie, Palin, and Leostream have tortiously interfered with and induced the breaches of the Agreement by Boruchovich, and used unfair and deceptive actions to interfere with Groove Networks' rights under the Agreement.

75.    Crosbie, Palin, and Leostream willfully, intentionally, and with improper motive, used improper methods and means in order to interfere with the contractual benefits due to Groove Networks under the Agreement.

76.    As a result of the tortious interference by Crosbie, Palin, and Leostream with the obligations of Boruchovich under the Agreement, Groove Networks has suffered and, unless the defendants are enjoined, will continue to suffer further, substantial harm and damages.

## REQUEST FOR RELIEF

WHEREFORE, Groove Networks respectfully requests that this Court:

(1)    enter judgment in Groove Networks' favor on all counts of this Complaint;

(2)    grant declaratory relief pursuant to 28 U.S.C. § 2201 declaring that Groove Networks is the sole and exclusive owner of all right, title and

interest in and to the Virtual Machine Controller: Windows Agent, P2V Wizard, and Miscellaneous Utilities;

(3)   grant preliminary and permanent injunctive relief so as to:

a.  enjoin the defendants from further copying or distributing the Copyrighted Software, or otherwise infringing on Groove Networks' copyrights;

b.  order the defendants to return to Groove Networks and account for any and all copies of the Copyrighted Software, including those portions of any program, document, or other object containing a copy of any part of the Copyrighted Software, or, alternatively, order that any such copies be seized from the defendants and destroyed or otherwise appropriately disposed of pursuant to 17 U.S.C. § 503;

c.  enjoin the defendants from further using, transferring or disclosing in any manner any of the trade secrets of Groove Networks, acquired or developed by Boruchovich while he was employed by Groove Networks;

d.  require the defendants to produce an accounting of their use and disclosure of any trade secrets of Groove Networks;

e.  require the defendants to produce an accounting for all gains profits and advantages derived from their acts of infringement and for their other violations of law; and

f.  require the defendants to assign to Groove Networks any purported interest that any of them may have in any of the Copyrighted Software;

17

(4)    award Groove Networks damages and any profits of the defendants

attributable to the infringement of Groove Networks' copyrights in accordance with 17

U.S.C. § 504;

(5)    award Groove Networks actual damages caused by the defendants other

violations;

(6)    order forfeiture to Groove Networks of compensation, payments, and

other benefits paid to Boruchovich;

(7)    award Groove Networks double damages, attorneys' fees, costs, and other

relief under Massachusetts General Laws, chapters 42 and 42A;

(8)    award Groove Networks treble damages and attorneys' fees under

Massachusetts General Laws, Chapter 93A; and

(9)    grant such other relief as is appropriate and just.

## DEMAND FOR JURY TRIAL

Groove Networks demands a trial by jury on those causes of action and issues so

triable.

Respectfully submitted,


GROOVE NETWORKS, INC.,

By its attorneys:


Ben T. Clements, BBO # 555802
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
(617) 451-1800


18