UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| | |
|---|---|
| GROOVE NETWORKS, INC.,<br>Plaintiff,<br><br>v.<br><br>LEOSTREAM CORPORATION, DAVID CROSBIE,<br>MICHAEL PALIN, AND BORIS BORUCHOVICH,<br>Defendants | C.A. NO. 04-10899PBS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND FOR STAY PENDING ARBITRATION**

**I.   INTRODUCTION**

The Defendant Boris Boruchovich moves this Court to enter an Order compelling arbitration. Defendants Leostream Corporation, David Crosbie, and Michael Palin move to stay all proceedings in this action until arbitration has been completed.

The Complaint in the subject action pertains to Defendant Boris Boruchovich's former employment with the Plaintiff and his alleged actions on behalf of Defendant Leostream Corporation during Mr. Boruchovich's employment with the Plaintiff. The alleged written employment Agreement between Plaintiff and Boris Boruchovich mandates arbitration of "any controversy, claim or dispute arising out of or relating to this Agreement, or the breach thereof, or arising out of or relating to the employment of the Employee [Boris Boruchovich]". See the Agreement attached hereto as Exhibit 1, Section 6.7.

1

Instead of pursuing arbitration, however, the Plaintiff has inexplicably sued Boris Boruchovich in this Court for allegedly violating the employment Agreement – an agreement which mandates arbitration.

## II.   FACTS

### A.   Background

This dispute concerns allegations that Defendant Boris Boruchovich improperly performed work for Defendant Leostream Corporation while employed by Plaintiff Groove Networks. Defendants David Crosbie and Michael Palin are principals of Defendant Leostream. The Plaintiff alleges that certain computer software code written by Defendant Boris Boruchovich for Defendant Leostream is owned by the Plaintiff pursuant to the employment Agreement between Boris Boruchovich and the Plaintiff and that the Defendants have infringed the copyright in that code. The Plaintiff further alleges that the Defendants have misappropriated Plaintiff's trade secrets (allegedly disclosed to them by Boris Boruchovich) in violation of the employment Agreement; that the Defendants committed unfair and deceptive trade practices; that Boris Boruchovich breached the Agreement, breached his fiduciary duty to the plaintiff, and breached a covenant of good faith and fair dealing implied in his employment Agreement; and that Defendants Leostream, David Crosbie, and Michael Palin tortiously interfered with the alleged employment Agreement between the Plaintiff and Boris Boruchovich.

Each of the Counts of the Plaintiff's Complaint, including the allegations and counts arising under state law and the allegations and counts against the co-Defendants, are based on the alleged improper actions of Defendant Boris Boruchovich during his employment with Plaintiff.

2

The Plaintiff's Complaint alleges that the Plaintiff and Defendant Boris Boruchovich signed a "NonDisclosure, Invention and NonCompetition Agreement" dated December 3, 2001.

Section 6.7 of that Agreement clearly states:

> 6.7 <u>Arbitration</u>. The parties agree that any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach thereof, or arising out of or relating to the employment of the Employee [Boris Boruchovich], or the termination thereof, including any claims under federal, state, or local law, shall be resolved by arbitration in Boston, Massachusetts in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. The parties agree that any award rendered by the arbitrator shall be final and binding, and that judgment upon the award may be entered in any court having jurisdiction thereof.

See Exhibit 1 attached hereto.

### B. The Complaint Allegations and Counts

Nearly all of the allegations and Counts of the Complaint are based on the terms of the Agreement – an agreement which mandates arbitration.

Paragraphs 13-16 of the Complaint quote Sections 1, 4.1(a), 5.1(a), 5.1(b), and 5.2(a) of the Agreement. In Count I, the Plaintiff alleges that it is the owner of certain software pursuant to Section 5.2 of the Agreement and federal copyright law. In Count II, the Plaintiff alleges that, pursuant to Sections 5.1 and 5.2 and other sections of the Agreement, Plaintiff is the owner of certain intellectual property developed by Boris Boruchovich. In Count IV, the Plaintiff alleges breach of the Agreement by Boris Boruchovich. In Counts V and VI, the plaintiff repeats the allegations of the preceding Complaint paragraphs, and alleges further breaches of the Agreement. In Count VII, the Plaintiff alleges tortious interference with the Agreement.

It is clear, therefore, that the facts as alleged by the Plaintiff in its Complaint constitute a

controversy, claim, or dispute under federal, state law or local law arising out of or relating to the Agreement, or the breach thereof, or arising out of or relating to the employment of Boris Boruchovich. Therefore, pursuant to the Agreement, this case must be decided in arbitration, not in Federal District Court.

### III.  LAW AND ARGUMENT

The Plaintiff utilizes the alleged Agreement as the basis for virtually all of the Counts of the Complaint. Principles of fairness and due process require that the Plaintiff be held to <u>all</u> of the terms of the alleged Agreement the Plaintiff seeks to enforce. The Agreement clearly mandates arbitration. Therefore, pursuant to the terms of the Agreement the Plaintiff is attempting to enforce, the Plaintiff should be required to arbitrate the dispute Plaintiff created by filing the instant Complaint.

There is a strong federal policy favoring arbitration especially when the parties agree to arbitration in a written Agreement.[1] Section 3 of the Federal Arbitration Act, 9 U.S.C. §3[2] provides for a stay of a trial of an action brought in a federal court on an issue referable to arbitration pursuant to a written arbitration agreement, and requires that the Court grant the stay

---

[1] In fact, the Patent Act, particularly 35 U.S.C. §294(a) provides that any contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under that contract, and that any such provision shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract. Also, the Copyright Act includes provisions such as 17 U.S.C. §§ 801 and 802 which provide for copyright arbitration royalty panels for certain disputes involving, for example, non-dramatic musical works.

[2] The Federal Arbitration Act 9 U.S.C. §1 excludes from its scope contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce, the exclusion exempts only contracts of employment of transportation workers. See <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 121 S.Ct. 1302 (2001). Defendant Boris Boruchovich was not a transportation worker and was not employed by the Plaintiff in that excluded category.

until arbitration is complete once the Court is satisfied that the issues involved in the suit or proceeding is referable under the arbitration agreement. 9 U.S.C. §3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for stay is not in default in proceeding with such arbitration.

Section 4 of the Federal Arbitration Act provides that the United States District Court has the power to compel arbitration. 9 U.S.C. §4 states in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement ... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ...

Arbitration in this case should result in lower costs and attorneys' fees for all the parties and a faster resolution of this dispute which would benefit all parties. A stay pending arbitration will ensure the arbitration proceedings and the federal court proceedings do not conflict and will clearly result in judicial economy.

The fact that only Boris Boruchovich was a party to the Agreement does not preclude a stay of the entire proceeding. In Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968), a district court denied the defendant's motion to stay pending resolution by arbitration because one of the

defendants was not a party to the arbitration agreement. The U.S. Court of Appeals of the First Circuit reversed the district court's denial of the stay. The Hilti court cogently recognized at page 369, n. 2 that:

> If arbitration could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised.

Also, in Knorr Brake Corp. v. Harbil, Inc., 556 F.Supp. 489, 493 (N.D. Ill. 1983), the Court determined that arbitration was proper even though a co-defendant was not a party to the arbitration agreement. The Court further granted the defendant's motion to stay the action and to compel arbitration. The Court found that all the issues involved the rights and obligations of the plaintiff and defendant; those rights and obligations were arbitrable; and the results of arbitration would impact conclusively on a co-defendant that was not a party to the arbitration.

In this case, the primary issues clearly involve the rights and obligations of the Plaintiff and Boris Boruchovich. Those rights and obligations are arbitrable and the results of arbitration will impact conclusively on the co-Defendants. For example, if it is determined in arbitration that computer software code written by Boris Boruchovich on behalf of Defendant Leostream is not "related to" the Plaintiff's business as defined in the alleged Agreement and that Boris Boruchovich did not disclose any of the Plaintiff's alleged trade secrets, then each count of the Complaint (alleged copyright infringement, misappropriation of trade secrets, Ch. 93A violations based on the same, breach of contract, implied covenant of good faith and fair dealing, fiduciary duty, and tortious interference with the Agreement) would likely fail as against all the Defendants.

Moreover, in Lawson Fabrics, Inc. v. Akzona, Inc., 355 F.Supp. 1146, 1148 (S.D.N.Y. 1973), affirmed 486 F.2d 1394 (2nd Cir. 1973), the court stated:

> It seems perfectly evident that that issues involving the labelling of textile goods, regardless of whether they are couched in Federal statutory terms, arise out of the contract for sale of those goods. For this reason, the Court finds that these claims fall within the ambit of the <u>sweeping arbitration clause</u> in the contract between plaintiffs .. and ... defendant.

Emphasis added.

In this case, it is evident that the actions of Boris Boruchovich during the period of his employment with the Plaintiff underlie all of the counts and allegations of the Complaint, however couched, as noted above. Furthermore, those counts and allegations fall within the broad and sweeping language of Section 6.7 of the Agreement, which states in pertinent part that:

> [A]ny controversy, claim, or dispute arising out of or relating to this Agreement, or the breach thereof, or arising out of or relating to the employment of the Employee [Boris Boruchovich], or the termination thereof, including any claims under federal, state, or local law, shall be resolved by arbitration ...

## IV.   CONCLUSION

For the reasons stated herein, arbitration of the dispute between Plaintiff and Boris Boruchovich is clearly mandated and a stay of the entire action concerning the Plaintiff and the other defendants is warranted.

WHEREFORE, the Defendants respectfully requests that this Court:

a.   Issue an Order compelling arbitration of all the allegations of the Complaint;

b.   Issue an Order staying the proceedings in this case in their entirety pending completion of arbitration;

c.   Hold Plaintiff in breach of the Agreement since Plaintiff, by filing the instant action, violated the arbitration clause of the Agreement; and

d.   Such other relief as the Court deems just and proper, including awarding the Defendants the costs and attorney fees associated with this Motion caused by the

Plaintiff's failure to seek arbitration prior to filing the Complaint in violation of the alleged Agreement.

Respectfully submitted,<br>
Defendants Leostream Corporation, David Crosbie, Michael Palin, and Boris Boruchovich,<br>
By their attorneys,

_____
Kirk Teska
BBO# 559,192
Iandiorio & Teska
260 Bear Hill Road
Waltham, MA 02451-1018
Tel: (781) 890-5678
Fax: (781) 890-1150

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Ben T. Clements, Esq., Clements & Clements LLP, 50 Federal Street, Boston, MA 02110, counsel of record for the Plaintiff Groove Networks, Inc., by mailing the same via first class mail on June 9, 2004.

_____
Roy J. Coleman

Attachments:

Exhibit 1: The alleged Agreement between Plaintiff and Defendant Boris Boruchovich

# NONDISCLOSURE, INVENTION AND
# NONCOMPETITION AGREEMENT

This Nondisclosure, Invention and Noncompetition Agreement ("Agreement") is made as of December 3, 2001 by and between Groove Networks, Inc., a Delaware corporation with its principal place of business at 100 Cummings Center, Suite 535Q, Beverly, Massachusetts (the "Company"), and Boris Bourchovich (the "Employee").

In consideration of the Company's employment of the Employee and the promises each party is making to the other in this Agreement, the parties agree as follows:

1. <u>Best Efforts.</u> The Employee agrees to devote his entire business time, attention and energies to the business and interests of the Company and to the performance of his duties as reasonably directed by the President of the Company or anyone designated by him. The Employee agrees to abide by the rules, regulations, instructions, personnel practices and policies of the Company, and any changes therein which may be adopted from time to time by the Company. The Employee acknowledges receipt of copies of all such rules and policies committed to writing as of the date of this Agreement.

2. <u>Compensation and Benefits.</u>

   2.1 <u>Salary.</u> The Company shall pay the Employee an annual salary of $105,000, to be paid in accordance with the Company's payroll practices commencing at the start of employment. Salary level shall be subject to adjustment when and as deemed appropriate by the Employee's Manager.

   2.2 <u>Fringe Benefits.</u> The Employee shall be entitled to participate in all benefit programs that the Company establishes and makes generally available to all of its employees, if any, to the extent that Employee's position, tenure, salary, age, health and other qualifications make him eligible to participate. The Company reserves the right to change its benefit programs at any time, as it deems appropriate.

3. <u>Employment at Will.</u> The Employee agrees that he is an at will employee of the Company and that he may terminate his employment at any time. The Employee further agrees that the Company may similarly terminate the Employee's employment at any time. This Agreement does not create an obligation on the part of the Company or any other person to continue the employment of the Employee.

4. <u>Non-Compete.</u>

   4.1 The Employee agrees that during the term of his employment and for a period of two (2) years thereafter he will not, directly or indirectly:

   (a) as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, or in any other capacity whatsoever (other than as the

holder of not more than one percent of the total outstanding stock of a publicly held company), develop, design, produce, market, distribute or sell (or assist any other person or company in developing, designing, producing, marketing, distributing or selling) products or services competitive with those developed or under development, designed, produced, marketed, distributed or sold by the Company while the Employee was employed by the Company, or which it would be reasonably foreseeable that the Company would develop, design, produce, market, distribute or sell in connection therewith; or

       (b)    hire any employee or employees of the Company or its affiliates, or recruit, solicit, entice, persuade or induce, or attempt to recruit, solicit, entice, persuade or induce, any employee or employees of the Company or its affiliates to terminate their employment with, or otherwise cease their relationship with, the Company or its affiliates; or

       (c)    solicit, divert or take away, or attempt to divert or to take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of the Company or its affiliates which were contacted, solicited or served by the Employee while employed by the Company.

    4.2    The restrictions in this Section 4 shall apply to any geographic area in which the Company develops, designs, produces, markets, distributes, or sells its products and services, and to any geographic area in which the Company has otherwise established goodwill or business. The Employee acknowledges and agrees that, at a minimum, the obligations of this covenant apply to the entire United States.

    4.3    The parties agree that the relevant public policy aspects of covenants not to compete have been discussed, and that every effort has been made to limit the restrictions placed upon the Employee to those that are reasonable and necessary to protect the Company's legitimate interests. The parties further agree that, during the course of his employment at the Company, the Employee will learn and have access to the Company's Proprietary Information (as defined below), and that the restrictions contained in this Section 4 constitute a material inducement to the Company in agreeing to hire the Employee. The Employee further agrees that if he violated Section 4.1 above, he would inevitably use or disclose such Proprietary Information.

    4.4    If any restriction set forth in this Section 4 is found by any court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

    4.5    The parties agree that the restrictions contained in this Section 4 are necessary for the protection of the Proprietary Information, business and goodwill of the Company and/or its affiliates and are considered by the Employee to be reasonable for such purposes. The Employee agrees that any material breach of this Section 4 will cause the Company and/or its affiliates substantial and irrevocable harm to the Company for which no

Version 2 – 2/19/01

adequate remedy would exist at law. Accordingly, in the event of any such breach, in addition to such other remedies that may be available, the Company shall have the right to specific performance and injunctive relief to enforce the restrictions of this Section 4. The Employee acknowledges that he has received compensation for the terms of this Section 4 pursuant to various stock option agreements and other compensation.

5.  Proprietary Information and Developments.

   5.1  Proprietary Information.

   (a)  The Employee agrees that all information and know-how, whether or not in writing, relating to the business, technical or financial affairs of the Company and that is generally understood in the industry as being trade secret, confidential and/or proprietary, that is designated as being, or reasonably should be understood to be, confidential or proprietary information of the Company, either verbally or in writing, or that is designated as representing trade secrets of the Company, either verbally or in writing (collectively, "Proprietary Information"), is and shall be the exclusive property of the Company. For purposes of this Agreement, Proprietary Information shall mean, by way of illustration and not limitation, all confidential information and know-how (whether or not patentable and whether or not copyrightable) owned, possessed or used by the Company, including, without limitation, any invention, existing or future product, formula, method, manufacturing techniques and procedures, composition, compound, project, development, plan, vendor information, supplier information, customer information, apparatus, equipment, trade secret, process, research, reports, clinical data, financial data, technical data, test data, know-how, computer program, software, software documentation, hardware design, technology, marketing or business plan, forecast, unpublished financial statement, budget license, patent applications, contracts, joint ventures, price, cost and personnel data.

   (b)  The Employee agrees that he will not not disclose any Proprietary Information to others outside the Company during or after his term of employment without the prior written approval of an officer of the Company, nor will he at any time use Proprietary Information for any unauthorized purpose, unless and until such Proprietary Information (i) has become public knowledge through legal means without fault by the Employee, or (ii) is already public knowledge prior to the signing of this Agreement.

   (c)  The Employee agrees that all files, letters, memoranda, reports, records, data, schematics, sketches, drawings, laboratory notebooks, program listings, computer programs, databases, products, test equipment, prototypes or other written, photographic, magnetic or other tangible material containing or embodying Proprietary Information, whether created by the Employee or others, which shall come into his custody or possession (hereinafter collectively referred to as the Company Records) shall be, shall continue to be and are the exclusive property of the Company to be used by the Employee only in the performance of his duties for the Company. All such Company Records or copies thereof and all other tangible property of the Company in the custody or possession of the Employee shall be delivered to the Company, upon the earlier of (i) a request by the Company or (ii) termination of employment.

After such request, termination or delivery, the Employee agrees not to and shall not retain any such Company Records or copies thereof or any such other tangible property.

5.2   Developments.

(a)   The Employee agrees that if at any time or times during his employment the Employee shall (either alone or with others) make, conceive, create, discover, invent or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data technique, know-how, trade secret or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright, trademark or similar statutes (including but not limited to the Semiconductor Chip Protection Act) or subject to analogous protection) (herein called "Developments") that (a) relates to the business of the Company or any customer of or supplier to the Company or any of the products or services being developed, manufactured or sold by the Company or which may be used in relation therewith, or (b) results from tasks assigned to the Employee by the Company, such Developments and the benefits thereof are and shall immediately become the sole and absolute property of the Company and its assigns, as works made for hire or otherwise, and Employee shall promptly disclose to the Company (or any persons designated by it) each such Development.

(b)   The Employee agrees to assign any rights (including, but not limited to, any copyrights and trademarks) Employee may have or acquire in the Developments and benefits and/or rights resulting therefrom to the Company and its assigns without further compensation and shall communicate, without cost or delay, and without disclosing to others the same, all available information relating thereto (with all necessary plans and models) to the Company.

(c)   The Employee agrees to cooperate fully with the Company, both during and after his employment with the Company, with respect to the worldwide procurement, maintenance and enforcement, including assistance or cooperation in legal proceedings, of copyrights, patents and similar protections (both in the United States and foreign countries) relating to Developments; and, if such cooperation by the Employee is required after the Employee has ceased to be employed by the Company, then the Company will reimburse the Employee for any expenses reasonably incurred by Employee in connection with such cooperation. The Employee shall sign all papers, copyright applications, assignments, declarations, powers of attorney, patent applications, and other related or necessary documents, which the Company may deem necessary or desirable in order to enforce and/or protect its rights and interests in any Developments or any Proprietary Information.

5.3   Other Agreements.

(a)   Except as set forth in Exhibit A, Employee hereby represents that he is not bound by the terms of any agreement with any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of his employment with the Company or to refrain from competing, directly or indirectly,

with the business of such previous employer or any other party. Except to the extent it may be prohibited by the agreements listed on Exhibit A hereto, the Employee intends to exercise his best efforts and use his best skills in performing his obligations under this Agreement. The Employee further agrees that during his employment he will not personally enter into any agreements that would (i) restrict or reduce the Employee's ability to use his best skills in performing his obligations under the Agreement or (ii) limit or restrict the Employee's ability to disclose information to the Company, if such information would be relevant to the business or operations of the Company as conducted at the date of such agreement or the business or operations that it would be reasonably foreseeable that the Company would conduct in the future.

(b)  The Employee represents that his performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by him in confidence or in trust prior to his employment with the Company. The Employee agrees that during his employment, he will not disclose to the Company, or induce the Company to use, any confidential or proprietary information, knowledge or data belonging to any previous employer of the Employee, any previous employee of the Company, or others.

5.4  Company and Affiliates. Where the term "Company" is used in this Section 5 it will be deemed to include any affiliate of the Company.

6.  Miscellaneous.

6.1  Notices. All notices required or permitted under this Agreement shall be in writing and shall be deemed effective upon delivery personally, by facsimile or by overnight mail, or upon deposit in the United States Post Office, by registered or certified mail, postage prepaid, addressed to the other party at the address shown above, or at such other address or addresses as either party shall designate to the other in accordance with this Section 6.1.

6.2  Pronouns and Captions. Whenever the context may require, any pronouns used in this Agreement shall include the corresponding masculine, feminine or neuter forms, and the singular forms of nouns and pronouns shall include the plural, and vice versa. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the scope or substance of any section of this Agreement.

6.3  No Waiver. No delay or omission by the Company in exercising any right under this Agreement shall operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

6.4  Amendment. This Agreement may be amended or modified only by a written instrument executed by both the Company and the Employee.

6.5  Survival of Agreement. This Agreement is effective as of the date of execution of this Agreement, will survive Employee's employment with the Company, and does

not in any way restrict Employee's right or the right of the Company to terminate Employee's employment.

      6.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and assigns, including any corporation with which or into which the Company may be merged or which may succeed to its assets or business, provided, however, that the obligations of the Employee are personal and shall not be assigned by him.

      6.7    Arbitration. The parties agree that any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach thereof, or arising out of or relating to the employment of the Employee, or the termination thereof, including any claims under federal, state, or local law, shall be resolved by arbitration in Boston, Massachusetts in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. The parties agree that any award rendered by the arbitrator shall be final and binding, and that judgment upon the award may be entered in any court having jurisdiction thereof.

      6.8    Governing Law. This Agreement shall be construed, interpreted and enforced in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to its choice of law rules.

      6.9    Severability. Each provision of this Agreement is severable from the other provisions. In the event that any provision of this Agreement is held invalid or unenforceable by a court having jurisdiction over the parties and the subject matter, or by an arbitrator, the parties agree to permit the court or arbitrator that declared the provision invalid, illegal or unenforceable to replace the invalid provision with a valid provision that it believes approximates the intent and economic effect of the invalid provision as closely as possible. The other provisions of this Agreement will remain in full force and effect.

      6.10    Entire Agreement. This Agreement and the exhibits hereto constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter of this Agreement.

      6.11    Employee Acknowledgement. Employee certifies and acknowledges that he has carefully read each of the provisions of this Agreement and that he understands and will fully and faithfully comply with all of them.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year set forth above.

*[Signatures appear on following page]*

GROOVE NETWORKS

PAUL J. GROUS

By: *[signature]*

Title: DEVELOPMENT MANAGER

BORIS BORUCHOVICH

*[signature: Bob Boruchovich]*

EXHIBIT A

OTHER AGREEMENTS