UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 SEP 30 P 3: 31

U.S. DISTRICT COURT
DISTRICT OF MASS.

GROOVE NETWORKS, INC.,

        **Plaintiff,**

vs.

LEOSTREAM CORPORATION,
DAVID CROSBIE, MICHAEL PALIN,
and BORIS BORUCHOVICH,

        **Defendants.**

Civil Action No. 04-10899-PBS

---

**GROOVE NETWORKS' CONSOLIDATED MEMORANDUM IN SUPPORT OF
MOTION TO VACATE ARBITRATION AND STAY ORDER; IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIM AND REQUEST FOR ATTORNEY
FEES; AND IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

<u>Introduction</u>

Groove Networks, Inc. ("Groove Networks") brought this action against its

former employee, Boris Boruchovich ("Boruchovich"), Leostream Corporation

("Leostream"), and two of Leostream's principals, to redress Boruchovich's breaches of a

Nondisclosure, Invention and Noncompetition Agreement ("the Agreement"), as well as

tortious interference with the Agreement by the other defendants, infringement by all

defendants of registered copyrights of Groove Networks, and various other violations.

Boruchovich and the other defendants (all represented by the same counsel) filed a

motion to compel arbitration of the claims against Boruchovich under an arbitration

clause in the Agreement and to stay the litigation. In an effort to minimize unnecessary

legal costs, Groove Networks assented to the motion for an arbitration and stay order.

However, soon after the Court granted the defendants' assented-to motion, Boruchovich

filed a Motion to Re-Open the Proceedings and a Motion for Summary Judgment, in which he asks the Court to put aside the stay he requested, but only for the purpose of granting him summary judgment on a purported Counterclaim alleging a breach of the Agreement by Groove Networks, as well as dismissal of the claims against him.

Although Groove Networks had assented to the motion for arbitration and a stay, and was prepared to proceed with arbitration against Boruchovich, Boruchovich's baseless summary judgment motion has forced Groove Networks to respond and now litigate issues in this Court. Accordingly, and for all the reasons explained more fully below, Groove Networks requests that the Court grant the following relief:

1.    **An order vacating the arbitration and stay Order and allowing the entire action to now proceed in this Court.** The arbitration and stay Order should be vacated because by filing his summary judgment motion and seeking to adjudicate his purported Counterclaim in this action -- conduct that is both inconsistent with the invocation of arbitration and prejudicial to Groove Networks -- Boruchovich has waived his right to rely on the arbitration clause.

2.    **An Order Dismissing with Prejudice Boruchovich's Counterclaim and denying his request for summary judgment.** The Counterclaim should be dismissed because, (a) as a matter of law the filing of this lawsuit did not constitute an actionable breach of contract; (b) the Counterclaim seeks to hold Groove Networks liable solely for petitioning this Court to enforce its contractual, statutory, and common law rights, and, as such, the Counterclaim must be dismissed under the Massachusetts anti-SLAAP statute, M.G.L. c. 231, §59H; (c) Boruchovich cannot establish any actual damages as a result of

the purported breach; and (d) even if he otherwise had a breach of contract claim, according to the defendants' own position, it would be subject to arbitration.

3.    **An Order Awarding Groove Networks its Attorney Fees in Responding to the Counterclaim and the Summary Judgment Motion.** Based on the mandatory attorney fee provision in the anti-SLAAP statute, M.G.L. c. 231, §59H, as well as Boruchovich's conduct in filing his summary judgment motion in contravention of the Court's arbitration and stay Order, Groove Networks should be awarded its attorney fees incurred in responding to the Counterclaim and the summary judgment motion.

**Background**

**The Agreement and the Allegations of the Complaint**

Boruchovich served as a software engineer for Groove Networks from December 3, 2001, until January 2004, when he was fired by Groove Networks. Complaint ¶¶10, 30. Under the terms of his Agreement with Groove Networks, Boruchovich agreed, among other things, "to devote his entire business time, attention and energies to the business and interests of [Groove Networks] and to the performance of his duties . . . ." Agreement §1 (a copy of the Agreement is attached as Exhibit B to Boruchovich's Motion for Summary Judgment). Boruchovich further agreed that during his employment with Groove Networks and for two years thereafter, he would not have any role in developing or designing software or other products or services competitive with those developed or distributed by Groove Networks while he was employed there, or that it was reasonably foreseeable that Groove Networks would develop, market or distribute. Agreement §4.1(a). The Agreement also contained a section entitled "Developments,"

3

under which Boruchovich agreed that any software or other work, developed by
Boruchovich during his employment with Groove Networks that in any way related to the
business, customers, suppliers, products, or potential products of Groove Networks, as
well as any legal interest in any such development, was the property of Groove Networks.
Agreement §5.2(a).

In about June 2002, Leostream, Crosbie, and Palin, without the knowledge of
Groove Networks, recruited Boruchovich to serve as a Chief Architect and Founding
Engineer for Leostream and to help develop virtual machine technology for Leostream,
while knowing that Boruchovich was a full-time employee of Groove Networks and that
his work for Leostream would violate his contractual and other legal obligations to
Groove Networks. Complaint ¶¶19-21. Thereafter, while ostensibly working for Groove
Networks, Boruchovich, in concert with the other defendants spent substantial amounts
of his time, during regular business hours and otherwise, developing several essential
software components of a virtual machine technology software package. *Id.* ¶¶22-24.
During this time, Boruchovich failed to effectively perform his responsibilities to Groove
Networks and provided little effective service to Groove Networks. *Id.* ¶29.

The virtual machine technology software developed by Boruchovich related to the
business and products of Groove Networks, as well as that of Groove Networks'
suppliers and customers. *Id.* ¶¶25. Under the terms of the Agreement, this software
developed by Boruchovich, as well as the copyrights and other legal interests in it, was
and remains the property of Groove Networks. Complaint ¶¶32-34; Agreement §5.2; 17
U.S.C. §§201(d), 204(a).

In violation of numerous provisions of the Agreement, Boruchovich made the virtual machine software and other confidential trade secrets of Groove Networks available to Leostream and the other defendants. Complaint ¶27. The defendants then incorporated the software components developed by Boruchovich, into a virtual machine technology software product, which they have marketed and sold as a product of Leostream. *Id.* ¶28.

On May 6, 2004, Groove Networks filed this action against Leostream, Crosbie, Palin, and Boruchovich. The Complaint charges all of the defendants with Copyright Infringement, in violation of 17 U.S.C. § 501 (Count I), Misappropriation of Trade Secrets (Count II), and unfair and deceptive acts and practices, in violation of M.G.L. c. 93A. (Count III). It also charges Boruchovich with breach of contract (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), and breach of fiduciary duty. (Count VI). Finally, the Complaint charges Leostream, Palin and Crosbie with tortuous interference with contract (Count VII).

### Proceedings Leading to The Arbitration and Stay Order

On or about May 25, 2004, counsel for all defendants called counsel for Groove Networks to discuss the Complaint. Clements Aff. ¶2. During this call, counsel for the defendants suggested that the case should be referred to arbitration under the Agreement's arbitration clause, Section 6.7, but did not say that the defendants intended at that time to file a motion to compel arbitration. *Id.* ¶¶2-3. Instead, the parties discussed the possibility of engaging in settlement discussions before making further submissions to the Court and Groove Networks agreed to extend the time for the defendants to respond to the Complaint until June 10, 2004. *Id.* ¶3. In that same call,

counsel for Groove Networks expressed a willingness to agree to further extensions to accommodate settlement discussions between the parties. *Id.* ¶.

During the ensuing two weeks, there were no further discussions between the parties concerning either settlement or the issue of arbitration, with the exception of one call from Groove Networks' counsel to defendants' counsel, which was met with no substantive response. *Id.* ¶¶4-5. Instead, on June 9, 2004, the defendants filed their Answer and Counterclaim, which alleged that the filing of the lawsuit constituted a breach of the arbitration clause in the Agreement, and a Motion to Compel Arbitration and For Stay Pending Arbitration. Counsel for the defendants did not advise counsel for Groove Networks that they would be filing this motion and did not inquire as to whether Groove Networks would assent to the motion. *Id.* ¶5.

Following the filing of the motion to compel arbitration and for a stay, the parties agreed to extensions of the time for Groove Networks to respond to the motion, in order to allow the parties to engage in settlement discussions. *Id.* ¶6. After the parties were unable to reach any settlement, in order to minimize unnecessary costs and legal fees associated with litigating the issue of which claims should be heard in which forum, and possibly arbitrating some claims while simultaneously litigating others, on August 25, 2004, Groove Networks filed an assent to the motion to compel arbitration and for a stay of the litigation. *Id.* ¶¶7, 9. On September 8, 2004, this Court entered an Order granting the Motion to Compel Arbitration and for Stay Pending Arbitration ("the Arbitration and Stay Order").

A week later, on September 16, 2004, Boruchovich filed his Motion to Re-Open

the Proceedings and his Motion for Summary Judgment on the Counterclaim and for

entry of judgment in his favor on the claims against him.

### Argument

**I.    The Court Should Vacate the Arbitration and Stay Order Because Boruchovich's Action In Seeking to Adjudicate His Purported Counterclaim in this Court Is Inconsistent With His Request for Arbitration, Prejudicial to <u>Groove Networks, and Constitutes a Waiver of the Arbitration Clause.</u>**

It is well established that "[a] party may waive arbitration expressly or

implicitly." *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir. 2004). Thus, for example, in

*Citigroup*, the First Circuit affirmed the district court's finding that the defendant

"waived its right to arbitrate by participating in the litigation, unduly delaying assertion

of its arbitration right, and prejudicing the plaintiffs." *Id.* In analyzing the question of

waiver, the Court explained, "no one factor dominates the analytical framework for

determining whether a party has implicitly waived its right to arbitrate." *Id.* Among

other factors, the courts consider, "whether the party has actually participated in the

lawsuit or has taken other action inconsistent with his right [to arbitration]," "whether the

defendants have invoked the jurisdiction of the court by filing a counterclaim without

asking for a stay of the proceedings," "whether important intervening steps (e.g. taking

advantage of judicial discovery procedures not available in arbitration ...) had taken

place," and "whether the other party was affected, misled, or prejudiced by the delay."

*Id.* (citation omitted).[1]

---

[1] Other factors include, "whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff," and "whether there has been a long delay in seeking the stay or whether enforcement of arbitration was brought up when trial was near at hand." *Id.*

In this case, Boruchovich's actions -- subsequent to obtaining the Arbitration and Stay Order -- clearly constitute a waiver of his right to insist on arbitration. While Boruchovich initially invoked the arbitration clause at the same time that he asserted his Counterclaim, he subsequently repudiated that invocation by filing his current motions and asking this Court to reopen the proceedings and adjudicate his purported Counterclaim for breach of the very Agreement which Boruchovich claims requires arbitration. By filing these motions, Boruchovich is clearly "participat[ing] in the lawsuit," invoking "the litigation machinery," and doing so in a manner that is "inconsistent with his right" to arbitration. *Citigroup*, 376 F.3d at 26.

It is equally clear that the procedural maneuverings of the defendants have "misled" and "prejudiced" Groove Networks. *Id.* Relying on the presumed good faith of the defendants' request for arbitration and a stay of the litigation, Groove Networks assented to that request in an effort to avoid potentially unnecessary burden and legal expense, even though it would have meant a delay in proceeding on its claims against Leostream, Palin, and Crosbie. Clements Aff. ¶¶7-8. Through Boruchovich's motion, however, the defendants now take the extraordinary position that Groove Networks' hands should be tied in seeking to litigate its claims, but that it should simultaneously be forced to defend in this Court a purported Counterclaim against Groove Networks arising out of the very same Agreement which Boruchovich claims can only be enforced through arbitration.

Because the Arbitration and Stay Order sought by the defendants stays the entire litigation, Groove Networks is not only forced to arbitrate, rather than litigate, its claims against Boruchovich, but is forced to delay all action on its claims against the other

defendants -- claims that even the defendants concede are not subject to arbitration. *See*

*generally Rae F. Gill, P.C. v. DiGiovanni*, 34 Mass.App.Ct. 498, 503, 612 N.E.2d 1205,

1209 ("Arbitration is a remedy created by a statute which limits its availability to the

parties to an arbitration agreement."), *review denied*, 415 Mass. 1106, 616 N.E.2d 809

(1993). [2] Had Groove Networks known that the defendants would seek to force it to

*litigate* a Counterclaim against it in this Court, after tying the hands of Groove Networks

on its claims, it would never have assented to the Arbitration and Stay Order. Clements

Aff. ¶10.[3]

In short, by misleading Groove Networks into assenting to a broad Arbitration

and Stay Order and then repudiating that Order and forcing Groove Networks to incur the

burden and expense of litigating the purported Counterclaim, Boruchovich has acted in a

manner utterly inconsistent with his request for arbitration, and in a manner that has been

both misleading and prejudicial to Groove Networks. Accordingly, the Court should hold

that Boruchovich has waived his right to arbitration and vacate the Arbitration and Stay

Order.

**II.    Boruchovich's Counterclaim Alleging Breach of the Agreement Fails As A
Matter of Law, Violates the Massachusetts Anti-SLAPP Statute, and Should
Be Dismissed.**

**A.    As a Matter of Law, Groove Networks Did Not Breach the Agreement
By Filing This Lawsuit.**

Boruchovich's claim that the filing of this lawsuit by Groove Networks to enforce

its rights under the Agreement, and its independent statutory and common law causes of

---

[2] The Agreement provides that it is to be governed by Massachusetts law.  Agreement §6.8.
[3] Even prior to Boruchovich's actions waiving the arbitration clause, a stay of the claims against the other
defendants, which are not subject to the arbitration clause, would not have been required by the Arbitration
Act. *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F.Supp. 757, 760 (D.
Conn.1996). Rather, it would have been left to the discretion of the Court whether or not to grant such a
stay in the exercise of its "inherent power to control disposition of causes on its docket." *Id.*

action against Boruchovich and the other defendants -- who are not subject to the Agreement -- fails as a matter of law for several reasons.

First, even leaving aside the undisputed fact that none of the claims in this action against Boruchovich's codefendants are subject to the arbitration clause, nothing in the arbitration clause or anywhere else in the Agreement supports Boruchovich's claim that the filing of a lawsuit against Boruchovich for claims arising out of or relating to the Agreement amounts to a breach of the Agreement. To the contrary, the arbitration clause provides that the parties agree that such claims shall be resolved by arbitration and that "judgment upon the award may be entered in any court having jurisdiction thereof." Agreement §6.7. Thus, far from prohibiting the assertion of claims under the Agreement in court, the Agreement specifically contemplates that rights under the agreement will be enforced in the courts.

The applicable Massachusetts and Federal Arbitration Acts further confirm that the filing of a lawsuit asserting claims covered by an arbitration agreement does not give rise to a breach of contract action. The Massachusetts Arbitration Act specifically contemplates that lawsuits may be brought raising issues that are subject to arbitration and that, even if arbitration is sought, the lawsuit will remain on the docket pending the outcome of arbitration. Thus, Section 2(d) of the Arbitration Act provides:

> Any action or proceeding involving an issue subject to arbitration shall be *stayed* if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect to such issue only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

M.G.L. c. 251 §2(d) (emphasis added).

The Federal Arbitration Act, which the defendants have relied upon in this action, similarly provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3 (emphasis added). Thus, under both state and federal law, the remedy for a party seeking to enforce an arbitration clause is an order compelling arbitration and *staying* the litigation pending the arbitration, not a counterclaim for breach of contract.

Nor does there appear to be any case law -- and none has been cited by Boruchovich -- that would support the notion that the filing of a lawsuit that includes claims subject to arbitration gives rise to a breach of contract action against the plaintiff.[4] In short, Boruchovich's breach of contract action is lacking any support in the language of the Agreement, the controlling statutes, and the applicable case law.

Boruchovich's claim that the filing of this lawsuit constituted a breach of the Agreement is particularly misguided in the circumstances of this case. Boruchovich does not contend that all of the claims asserted by Groove Networks in this lawsuit are subject to arbitration. To the contrary, Boruchovich's attorneys have specifically taken the

---

[4] The only case relied on by Boruchovich, *Brennan v. King*, 139 F.3d 258 (1st Cir. 1998), provides no support whatsoever for his position. In *Brennan*, the district court granted summary judgment on a university professor's wrongful denial of tenure claims, without reaching the merits of the claims, on the ground that the plaintiff failed to pursue grievance procedures mandated by his employment contract. *Id.* at 259. There was no affirmative claim by the university that it was entitled to damages against the plaintiff for failing to follow the grievance procedures (or failing to seek arbitration of claims) and thus, no claim remotely analogous to the Counterclaim asserted by Boruchovich here. Moreover, on appeal, the First Circuit specifically found the the plaintiff's claims were *not* subject to arbitration, and affirmed (partially) the district court's decision (while reversing part of it), solely based on the failure to exhaust the grievance procedures. *Id.* at 267, 270. For each of these reasons, the case is irrelevant to any of the issues raised here.

position that the claims against their other clients (and Boruchovich's codefendants), Leostream, Palin, and Crosbie, are not subject to arbitration. Thus, it is undisputed that the only way Groove Networks could assert its claims against these defendants, and the only way that Groove Networks could join all of these related claims in one action was to file this lawsuit. *See Rae F. Gill, P.C. v. DiGiovanni*, 34 Mass.App.Ct. at 503, 612 N.E.2d at 1209. Nothing in the Agreement suggests that Groove Networks was not entitled to protect its rights by naming all of the defendants to its claim in the lawsuit.

**B.    Boruchovich's Counterclaim is Barred as a Matter of Law By the Massachusetts Anti-SLAPP Statute.**

In addition to failing to state a claim under principles of contract and arbitration law, Boruchovich's Counterclaim also runs afoul of the Massachusetts anti-SLAPP statute, M.G.L. c. 231 §59h.[5] The anti-SLAPP statute was enacted "to immunize parties from claims 'based on' their petitioning activities." *Fabre v. Walton*, 436 Mass. 517, 520, 781 N.E.2d 786, 783 (2002). The statute provides in pertinent part that, "[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss" the claims. M.G.L. c 231, §59H.

The anti-SLAPP statute by its terms protects the filing of a civil lawsuit, by including within the definition of protected petitioning activity, "any written ... statement ... submitted to a ... judicial body." M.G.L. c. 231, §59H. The Massachusetts courts have consistently applied the statute to protect litigants in private civil actions. *See Fabre*

---

[5] This Court has recognized the applicability of the anti-SLAPP statute in suits brought in federal court. *See Baker v. Coxe*, 940 F. Supp. 402, 417 (D. Mass. 1996), *aff'd*, 230 F.3d 470 (1st Cir. 2000). This conclusion is correct, because the statute confers on parties the substantive state-law right not to be sued for exercising their right to petition the courts.

781 N.E.2d at 785 (filing of complaint and affidavit are petitioning activities protected by anti-SLAPP act); *Sea Heights Residents Ass'n, Inc. v. Tringale*, No 970169 (Mass. Super. Ct. Oct. 31, 1997)(1997 WL 1229246 at *2), citing *Duracraft Corp. v. Holmes Products*, 42 Mass. App. Ct. 572, 678 N.E.2d 1196 (1997) (the anti-SLAPP statute protects petitioning activities that do not themselves involved matters of "public concern," such as a civil lawsuit); *Office One, Inc. v. Lopez*, 437 Mass. 113, 122, 769 N.E.2d 749, 756-67 (2002) (it is not necessary that the activity challenged by the SLAPP action be motivated by a matter of public concern).

To invoke the protection of the statute, the party moving to dismiss must make a threshold showing "that the claims against it are, in fact 'based on' its petitioning activities alone and have no substantial basis other than or in addition to its petitioning activities." *Office One*, 769 N.E.2d at 757. The burden shifts to the non-movant, and the claims must be dismissed unless the non-movant establishes that the plaintiff's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law." *Id.* at 757-58. To show that there is "no arguable basis in law" for the petitioning activity, the non-movant facing an anti-SLAPP motion to dismiss must show "that no reasonable person could conclude that there was a basis in law" for the petitioning activities. *Baker v. Parsons*, 434 Mass, 543, 555 n.20, 750 N.E.2d 953, 962 n.20 (2001).

Here, there can be no dispute that Boruchovich's Counterclaim is based solely on the protected petitioning activity of Groove Networks, that is, the filing of this action by Groove Networks to enforce its contractual, statutory and common law rights, and that the Counterclaim has no substantial basis other than the filing of the Complaint. As Boruchovich himself explains the purported basis for his Counterclaim: "Groove

Networks, Inc. never should have filed a Federal District Court action for breach of contract against Mr. Boruchovich or any action arising out of Mr. Boruchovich's previous employment when the very contract alleged by the Plaintiff mandates arbitration. To do so is a clear breach of contract by Plaintiff Groove." Boruchovich Summary Judgment Motion at 2. Thus, because the Counterclaim seeks to impose liability on Groove Networks solely for exercising its right to petition the courts for redress, the Counterclaim falls squarely within the ambit of the anti-SLAPP statute. *See Fabre*, 436 Mass. at 523, 781 N.E.2d at 785 ("a cursory review of [the] complaint, which simply recounts and complains of [defendant's] conduct in bringing and testifying at the 209A [abuse protection] proceedings, demonstrates that the claim against [defendant] is based on the exercise of her right to petition"); *Office One, Inc.*, 437 Mass. at 122, 769 N.E.2d at 757 ("if the only conduct complained of is petitioning activity, then there can be no other 'substantial basis' for the claim")(emphasis in original).

Boruchovich cannot establish, as he must to avoid dismissal of the Counterclaim under the anti-SLAPP statute, that Groove Networks' suit is devoid of any factual support or any arguable basis in law. Indeed, Boruchovich has conceded in his Summary Judgment Motion that he was working for the defendant Leostream while he was employed by Groove Networks (Boruchovich Motion at 2-3) -- a clear violation of the Agreement. *See* Agreement §1 (Boruchovich agreed "to devote his entire business time, attention and energies to the business and interest of [Groove Networks] and to the performance of his duties"). Nor has Boruchovich suggested that the other claims against him and against his codefendants are devoid of a factual or legal basis.

In short, Groove Networks' lawsuit against the defendants constitutes a protected exercise of its right to petition the courts for relief from defendants' wrongful conduct. Boruchovich cannot show that the claims lack support in the facts or that no reasonable person could conclude that there was a basis in law for filing suit against the defendants. Accordingly, Boruchovich's Counterclaim should be dismissed under the anti-SLAPP statute.

**C.     Boruchovich's Counterclaim Fails as A Matter of Law Because He Cannot Demonstrate that He Has Suffered any Actual Damages.**

In order to establish a breach of contract action, Boruchovich must demonstrate that he has suffered actual damages as a result of the alleged breach. Far from offering evidence of any actual damages, the materials submitted by Boruchovich in purported support of his claim demonstrate beyond dispute that he has suffered no damages.

The only "damages" claim offered by Boruchovich is his assertion that he has been harmed because the attorneys representing all of the defendants filed an Answer, Counterclaim, and a Motion to compel arbitration and stay the litigation. *See* Boruchovich Motion for Summary Judgment at 2. However, neither the arbitration clause nor any other provision in the Agreement provides for the recovery of fees incurred in enforcing the Agreement. For this reason alone, Boruchovich's claim that fees incurred in enforcing the arbitration clause gives rise to a damages action fails as a matter of law.

Boruchovich's damages claim also fails as a matter of undisputed fact. Boruchovich fails to even argue, let alone offer evidence, that *any* fees were incurred on his behalf that would not have been incurred on behalf of the other defendants if the suit had been filed against those defendants only. To the contrary, the only "evidence"

15

Boruchovich offers, is the Affidavit of Roy Coleman, one of the defendants' attorneys, which makes clear that the alleged fees were incurred on behalf of the other defendants, Leostream, Palin, and Crosbie, and that no fees were incurred solely on behalf of Boruchovich. *See Id.*, Ex. 6.

Nor does Boruchovich offer any evidence (or even allege) that he, rather than Leostream, has actually paid any of the legal costs, and there is every reason to believe that the defense has been directed and funded by Leostream. Because Boruchovich does not and cannot claim that Groove Networks breached the Agreement by suing Leostream, Palin, and Crosbie, these legal fees incurred by them and primarily on their own behalf, as a matter of law, cannot be construed as damages to Boruchovich.

The Coleman affidavit also indicates that most of the asserted fees were incurred in such activity as "negotiate[ing] settlement proceedings with counsel for the Plaintiff" and "prepar[ing] a Memorandum in support of a settlement proposal." Summary Judgment Motion, Ex. 6, ¶4. Thus, even if these costs had been incurred by and on behalf of Boruchovich, rather than the other defendants, these costs were directed at resolving the controversy between Groove Networks and the defendants, and not with shifting the forum of the dispute from this Court to arbitration.[6]

Finally, any costs that have been incurred by the defendants in seeking to require arbitration of the claims against Boruchovich have been the result of the defendants' own strategic decisions -- including their failure to comply with the spirit (if not the letter) of

---

[6] Mr. Coleman claims that "To date, in the subject action, *the Defendants* have incurred legal costs totaling $37,758.04." Summary Judgment Motion, Ex. 6, ¶5 (emphasis added). Not surprisingly, he makes no effort to identify the amount of fees incurred in seeking to compel arbitration. An examination of the defendants' arbitration motion papers, however, which consist of a three-page motion and an eight-page boiler-plate memorandum, and a copy of the Agreement, indicates that the fees actually incurred seeking arbitration could not have been more than a tiny fraction of this amount. *See id.*, Ex.D.

Local Rule 7.1 -- and not any action by Groove Networks. Contrary to the suggestion in Boruchovich's motion (Motion at 3), Boruchovich's counsel did not consult with counsel concerning any proposed motion to compel arbitration and for a stay. Instead, despite the fact that the parties had agreed to engage in discussions in an effort to settle the dispute and Groove Networks was prepared to extend the time to respond to the Complaint pending those discussions, the defendants proceeded to file their Answer, Counterclaim, and motion to compel arbitration and for stay, without advising counsel for Groove Networks that they were going to file a motion and without seeking any agreement concerning the motion. Clements Aff. ¶¶4-6.

### D.  Even if Boruchovich Otherwise Had a Viable Claim, By His Own Allegations the Claim Would Be Subject to Arbitration.

The arbitration clause relied on and repeatedly invoked by the defendants provides:

> The parties agree that any controversy, claim, or dispute arising out of or relating to this Agreement, or the breach thereof . . . shall be resolved by arbitration in Boston, Massachusetts, in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. The parties agree that any award rendered by the arbitrator shall be final and binding, and that judgment upon the award may be entered in any court having jurisdiction thereof.

Agreement §6.7.

For all the reasons explained above, Boruchovich has no claim for breach of the Agreement, but if he did, it would, by definition, be a claim "arising out of or relating to th[e] Agreement, or the breach thereof," under Section 6.7. Thus any such claim would indisputably, and according to Boruchovich's own arguments, be subject to binding arbitration under the Agreement. Thus, to the extent the Court does not dismiss the Counterclaim and does not vacate the order compelling arbitration and granting a stay,

17

Boruchovich's purported breach of contract claim would also have to be referred to arbitration.

## III.    The Court Should Award Groove Networks Attorneys' Fees Pursuant to the Anti-SLAAP Statute.

The anti-SLAPP statute mandates an award of attorneys' fees to a party who successfully moves to dismiss claims under the authority of that statute, providing in pertinent part as follows:

> If the court grants such special motion to dismiss [claims under the anti-SLAPP statute], *the court shall award the moving party costs and reasonable attorney's fees*, including those incurred for the special motion and any related discovery matters.

(emphasis added.) *See also McLarnon v. Jokisch*, 431 Mass. 343, 349-350, 727 N.E.2d 813, 818 (2000) ("The judge has no discretion in deciding whether to award costs and fees. A judge *must* award costs and fees in cases in which the judge grants the special motion to dismiss" under the anti-SLAPP statute)(emphasis added); *Fabre* 436 Mass at 525, 766 N.E.2d at 484 ("[t]he anti-SLAPP statute requires the payment of attorney's fees and costs if the judge allows a special motion to dismiss"). Because Boruchovich has asserted and pursued a Counterclaim that is precluded by and should be dismissed pursuant to the anti-SLAPP statute, Groove Networks is entitled to an award of its costs and attorneys' fees in pursuing its motion and in responding to the summary judgment motion.

The award of fees is particularly appropriate in the unusual circumstances of this case. Having sought and obtained an order compelling arbitration and a stay under the Agreement, it is the height of questionable gamesmanship for Boruchovich to now ask this Court to adjudicate his purported Counterclaim under the same Agreement in his

favor. Indeed, if the Court were to accept the theory underlying Boruchovich's Counterclaim, his seeking to litigate that Counterclaim in this Court after entry of the Stay and Arbitration Order constitutes a separate breach of the Agreement by him. This conduct, in addition to the violation of the anti-SLAPP statute, further supports an award of fees in favor of Groove Networks.

## IV.   Boruchovich Is Not Entitled to Dismissal of the Claims Against Him.

For the reasons explained above, the Court should vacate the Arbitration and Stay Order, deny Boruchovich's request that he be dismissed as a party, and allow this litigation to proceed against all defendants.

But even if the Court does not vacate the Arbitration and Stay Order, it should nonetheless deny the request to have Boruchovich dismissed as a party. As is discussed above, under both the Massachusetts and Federal Arbitration Acts, the remedy for a party seeking to compel arbitration of claims brought in a lawsuit is a stay, not a dismissal, of the claims pending arbitration. M.G.L. c. 251 §2(d); 9 U.S.C. §3. *See, e.g., Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6 (1st Cir. 2004) (treating the defendant's request for the "over-favorable remedy of dismissal," "as encompassing the lesser alternative remedy of a stay and [arbitration] reference," as provided for in the Arbitration Act); *Massen v. Cliff*, 2003 WL 2012404, *2-3 (S.D.N.Y. 2003) ("the relevant statutory language indicates that a stay, rather than dismissal, is the appropriate remedy"). Particularly where, as here, Boruchovich has already sought and received a

stay of the proceedings pending arbitration, there is no basis to allow him to be dismissed as a party from the case.[7]

## Conclusion

For the foregoing reasons, plaintiff Groove Networks respectfully requests that the Court:

1.    vacate the Court's Order of September 8, 2004, in which the Court referred the claims against Boruchovich to arbitration and stayed the litigation;

2.    dismiss the Counterclaim of Boruchovich with prejudice pursuant to Fed. R. Civ. P. 12(c) and M.G.L. c. 231 §59H;

3.    deny Boruchovich's Motion for Summary Judgment; and

4.    award Groove Networks its fees incurred in responding to the Counterclaim and Boruchovich's summary judgment motion, pursuant to M.G.L. c. 231 §59H.

Respectfully submitted,

GROOVE NETWORKS, INC.,

By its attorneys:

Ben T. Clements, BBO # 555802
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110
(617) 451-1800

---

[7] Indeed, if he were dismissed from the case there would be little rationale left for staying the proceedings as to the other defendants. Thus, if the Court does grant the motion to dismiss Boruchovich as a party, this will provide a separate basis to vacate the stay and allow the action to proceed against the other defendants.

## CERTIFICATE OF SERVICE

I, Ben T. Clements, certify that I have caused a copy of the foregoing to be served on counsel for the defendants, Kirk Teska, Iandiorio & Teska, 260 Bear Hill Road, Waltham, MA 02451-1081, by mail on September 30, 2004.

Ben T. Clements